ACCEPTED
07-15-00082-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/4/2015 4:40:36 PM
Vivian Long, Clerk

CAUSE NO. 07-15-00082-CV

IN THE

COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AMARILLO, TEXAS

Appealed from the 99th District Court
Lubbock County, Texas

ROBERT WESTERBURG, ADMINISTRATOR OF THE ESTATE OF
R.D. WEST a/k/a RANDY DIXON WESTERBURG,

*Appellants/Cross-Appellee,*

vs.

WESTERN ROYALTY CORP.,

*Appellee/Cross-Appellant.*

CROSS-APPELLEE'S BRIEF

Steven Thornton
State Bar No. 00789678
*WESTERBURG & THORNTON, P.C.*
6060 N. Central Expressway, Suite 690
Dallas, Texas 75206
Phone No.:   214.528.6040
Facsimile:    214.528.6170
steve@mwtlaw.com

ATTORNEY FOR APPELLANT
ROBERT WESTERBURG

CROSS-APPELLEE REQUESTS ORAL ARGUMENT

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………..………..…… 2

TABLE OF AUTHORITIES …………………………………...………. 3

SUMMARY OF CASE …………………………………………………. 4

REQUEST FOR ORAL ARGUMENT ……………………………….… 5

STATEMENT OF FACTS …………………………………………….... 6

SUMMARY OF THE ARGUMENT ..……………………………….... 10

ARGUMENT AND AUTHORITIES …………...……………….……….. 11

I.    Standard of Review ………………………………….……… 11

II.   Judge Sowder Properly Ordered Western Royalty to Produce Records …. 12

    A.    Texas Law Regarding Corporate Records …………...…………. 12

    B.    Judge Sowder Properly Granted Westerburg Access to Western Royalty's Books and Records …………………………………… 13

    C.    Western Royalty's Point of Error is Meritless ………...................... 14

        C.1.   Western Royalty Failed to Properly Preserve Error Regarding the California Probate Court and Prevented Westerburg from Completing his Reporting Requirement ……..………….......… 15

        C.2.   Judge Sowder's Order Limited to Documents that Satisfy Westerburg's Proper Purpose ……………………………….. 16

        C.3.   Western Royalty Incorrectly Represents the Effect of IRS Ruling ……………………………………………………. 18

CONCLUSION and PRAYER ………………………………………..……… 20

CERTIFICATE OF SERVICE ……………………………………………… 21

CERTIFICATE OF COMPLIANCE ……………………………………..…… 22

CROSS-APPELLEE'S APPENDIX ………………………………………….. 23

# TABLE OF AUTHORITIES

## Case Law

*Baker's Campground, Inc. v. McCalla*, 2012 Tex. App. LEXIS 6173
(Tex. App. – Waco 2012, no pet.) …………………………………………… 11

*City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678
(Tex. 1979) …………………………………………………………………. 12

*Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ……………….. 11

## Other Authorities

California Probate Code § 8800 …………………………………………. 6, 14, 23

California Probate Code § 8804 …………………………………………. 6, 14, 23

California Probate Code § 8850 …………………………………………. 6, 14, 23

Tex. Bus. Orgs. Code § 21.218 …………..…… 4, 6, 7, 10, 11, 12, 13, 14, 19, 20, 23

Tex. Bus. Orgs. Code § 21.222 …………………………………………… 4, 7, 23

Tex. R. Civ. P. 166a ……………………………………………………… 12

## SUMMARY OF THE CASE

In 2013, Robert Westerburg's brother, R.D. West, died in California. A portion of the Estate of R.D. West included 350 shares of Western Royalty Corporation (hereinafter "Western Royalty"). Once appointed as administrator of R.D. West's estate and acting solely in that capacity, Robert Westerburg (hereinafter "Westerburg") sought to examine the books and records of Western Royalty in order to ascertain a valuation of the stock owned by the Estate and to allow Westerburg to complete an inventory requirement set by the probate court and California probate law.

Pursuant to the Texas Business Organizations Code, Westerburg made a request to Western Royalty for access to the books and records of the company. Western Royalty refused. Westerburg filed suit against Western Royalty seeking access to the books and records of the company and recovery of his attorney's fees, costs and expenses pursuant to sections 21.218 and 21.222 of the Texas Business Organizations Code.

After engaging in some limited discovery, the parties filed competing traditional motions for summary judgment. Judge Sowder considered both motions and ultimately granted Westerburg's request and ordered Western Royalty to make available to Westerburg a defined set of books and records for examination and photocopying. Judge Sowder refused to award Westerburg any attorney's fees in this matter but did award him court costs and expenses.

# REQUEST FOR ORAL ARGUMENT

Westerburg requests oral argument in this cause as he believes it would be helpful to the Court in evaluating these issues.  Westerburg believes that given the nature of the claims he is making and the defenses set forth by Western Royalty, the Court may have questions for the parties that will be useful in reaching a decision.

# STATEMENT OF FACTS

Mr. R.D. West died on August 22, 2013 in California. At the time of his death, R. D. West was a record holder of 350 shares of Western Royalty. A California Probate Court appointed Robert Westerburg to administer the Estate of R.D. West, deceased. *Clerk's Record,* Vol. 1 – 95. Westerburg, by and through R.D. West's ownership and being a holder of shares of Western Royalty, qualified to examine the corporate records of Western Royalty pursuant to Texas Business Organizations Code § 21.218. *Clerk's Record,* Vol. 1 – 97.

On February 19, 2014, Westerburg delivered to Western Royalty a written demand for examination of sixteen specific categories of books and records. *Clerk's Record,* Vol. 1 – 96. Westerburg's purpose in seeking the examination of these documents is to determine the fair market value of the Estate's interest in Western Royalty for the purpose of preparing the required Inventory and Appraisement for filing in the pending probate case in the Superior Court of California, San Diego, California. *Clerk's Record,* Vol. 1 – 97. Pursuant to the California Probate Code, Westerburg must file with the California Probate Court Clerk an inventory of the property to be administered in the Decedent's estate together with an appraisal. *California Probate Code* §§ 8800(a), 8804, and 8850(a); *Clerk's Record,* Vol. 1 – 95, 101-103.

As Western Royalty is not a publically traded company and as Western Royalty does not produce and distribute any information (other than a small

dividend to shareholders and a 1099 federal income tax reporting form) to its shareholders from which such a calculation can be made, Westerburg has no other means available to him which would provide the information necessary to comply with the California Probate Code. *Clerk's Record,* Vol. 1 – 97. The only purpose for which Westerburg sought this information is to meet his obligations under the California Probate Code. *Clerk's Record,* Vol. 1 – 97.

Western Royalty refused Westerburg's request. *Clerk's Record,* Vol. 1 – 97. As such, Westerburg brought suit against Western Royalty seeking the right to access and examine the requested books and records of Western Royalty and to recover his costs and expenses, including attorney's fees, pursuant to sections 21.218 and 21.222 of the Texas Business Organizations Code. *Clerk's Record,* Vol. 1 – 97. Western Royalty objected to both of these claims.

During the proceedings, Judge Sowder ordered Western Royalty to produce to Westerburg: 1) financial documents detailing the book value of the stock; 2) any financial statements from the last four years; 3) profit or loss statements from the last four years; 4) loan applications made by Western Royalty from the last four years; 5) federal and state tax returns submitted by Western Royalty from the last four years; 6) all existing oil and gas leases and corresponding division orders and royalty payments for the last four years; 7) a sworn statement from Tom Whiteside, President of Western Royalty, that the company has no good will or intangible value; and, 8) any details of any stock sold, including purchase price and

amount of stock, that has occurred in the last seven years. *Clerk's Record,* Vol. 1 – 75.

In response to the Court's order, Western Royalty produced no financial documentation detailing the book value of the corporation's stock. Western Royalty did produce 105 pages of documents. Those documents consisted of 2010 - 2013 tax returns, 3 leases and a sworn statement that the company has no good will or intangible value. *Clerk's Record,* Vol. 1 – 107-220. Western Royalty answered that it had no financial documents detailing the book value of the stock, no financial statements from the last four years and no profit or loss statements from the last four years. *Clerk's Record,* Vol. 1 – 107-220. Based on this production, Westerburg was unable to determine the share value for Western Royalty and, consequently, was unable to fulfill his reporting obligation to the California Probate Court.

Following this order and limited production of documents, the parties filed competing motions for summary judgment. In his motion, Westerburg detailed the problems with Western Royalty's prior record production and the need for additional documents to satisfy his purpose of determining the value of the Estate's shares in Western Royalty.

After considering the motions and evidence adduced by both parties, Judge Sowder granted Westerburg's request and ordered Western Royalty to produce documents in eight defined categories. Judge Sowder also awarded Westerburg court

costs and expenses.  But, Judge Sowder denied Westerburg's request for recovery of his attorney's fees.  *Clerk's Record,* Vol. 1 – 256-259.

# SUMMARY OF THE ARGUMENT

Westerburg contends that Judge Sowder properly granted his Motion for Summary Judgment and ordered Western Royalty to produce a specific category of books and records for examination pursuant to Section 21.218 of the Texas Business Organizations Code. Western Royalty's production following Judge Sowder's first order was insufficient to allow Westerburg to determine the value of the shares of Western Royalty. Given the evidence produced to the trial court by the parties, this Court should affirm Judge Sowder's ruling ordering Western Royalty to produce a specific category of books and records for Westerburg's examination.

## ARGUMENTS AND AUTHORITIES

Western Royalty contends in this appeal that Judge Sowder improperly ordered Western Royalty to produce specific categories of books and records for Westerburg's examination. Western Royalty relies on an IRS regulation and a prior order from Judge Sowder in its argument that it fulfilled its obligations under section 21.218 of the Texas Business Organizations Code, thus leaving Westerburg without a proper purpose for requesting additional information. But, the material that Western Royalty produced was insufficient to meet Westerburg's needs for ascertaining a value for the shares of Western Royalty. Further, Western Royalty only produced a fraction of the material that the IRS regulation and Judge Sowder's original order required. Finally, even if this Court determines that Western Royalty's original production was sufficient to meet Westerburg's needs, Western Royalty still violated section 21.218 of the Texas Business Organizations Code by refusing Westerburg's original, pre-litigation request for access to the documents and forcing Westerburg to file the lawsuit.

## I.     Standard of Review

Texas appellate courts review the grant of a traditional motion for summary judgment de novo. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Baker's Campground, Inc. v. McCall*a, 2012 Tex. App. LEXIS 6173 (Tex. App. – Waco 2012, no pet.). In a traditional summary judgment proceeding, the issue is whether the movant met its burden for summary judgment by establishing that no

11

genuine issue of material fact exists entitling the movant to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

## II. Judge Sowder Properly Ordered Western Royalty to Produce Records

In both his prior ruling and in his ruling on the competing motions for summary judgment, Judge Sowder held that, pursuant to section 21.218 of the Texas Business Organizations Code, Westerburg is entitled to examine the books and records of Western Royalty and has a proper purpose for doing so. The central issue for Western Royalty's appeal is that Western Royalty contends that it has already produced sufficient documentation to allow Westerburg to determine the share value for the company. Westerburg contended, and Judge Sowder ruled, that Western Royalty had not met its obligations under section 21.218 of the Texas Business Organizations Code.

### A. Texas Law Regarding Corporate Records

The Texas Business Organizations Code provides that a holder of shares of a corporation for at least six months is entitled, upon written demand stating a proper purpose, to examine and copy the corporation's relevant books, records of account, minutes and share transfer records. *Tex. Bus. Orgs. Code* § 21.218(b). More broadly, the Texas Business Organizations Code empowers a court, upon proof of a proper purpose, to compel a corporation to produce such records for examination

by the holder regardless of the period during which the holder was a record holder. *Tex. Bus. Orgs. Code* § 21.218(c).

## B. Judge Sowder Properly Granted Westerburg Access to Western Royalty's Books and Records

In this case, Westerburg demonstrated to Judge Sowder that he met all of the requirements of section 21.218 entitling him to examine the books and records of Western Royalty. First, Westerburg adduced evidence that his brother, Mr. R. D. West, was a record holder of 350 shares of Western Royalty for over 20 years. *Clerk's Record,* Vol. 1 – 95. Mr. West died on August 22, 2013. *Clerk's Record,* Vol. 1 – 95. Westerburg then described for Judge Sowder how the Superior Court of California, County of San Diego, appointed Westerburg to administer the Estate of R.D. West, deceased. *Clerk's Record,* Vol. 1 – 95. Second, Westerburg delivered to the Western Royalty a written demand for examination of sixteen specific categories of books and records on or about February 19, 2014. *Clerk's Record,* Vol. 1 – 96-97. In that demand, Westerburg detailed his need for the examination. *Clerk's Record,* Vol. 1 – 96-97. Western Royalty refused to comply with that request. *Clerk's Record,* Vol. 1 – 97. Western Royalty did not contest any of these facts in the summary judgment proceedings.

The only other issue was whether Westerburg had a proper purpose in requesting the examination of books and records. California probate law requires an administrator to file with the California Probate Court Clerk an inventory of the

property to be administered in a Decedent's estate together with an appraisal. *Cal. Prob. Code* §§ 8800(a), 8804, and 8850(a); *Clerk's Record,* Vol. 1 – 95, 101-103. In order to satisfy this obligation, Westerburg needed to determine the fair market value of the Estate of R.D. West's interest in Western Royalty. Western Royalty is not a publically traded company nor does it produce and distribute any information to its shareholders from which a determination of the fair market value of the stock can be made. *Clerk's Record,* Vol. 1 – 97. As such, Judge Sowder determined that, as a matter of law, this need for information constitutes a proper purpose under section 21.218 of the Texas Business Organizations Code. With those facts established, Judge Sowder granted Westerburg's request and ordered Western Royalty to make available for examination and copying several specific categories of documents. *Clerk's Record,* Vol. 1 – 256-259.

### C.    Western Royalty's Point of Error is Meritless

Western Royalty makes three arguments that no proper purpose exists regarding Westerburg's request for access to Western Royalty's books and records. First, Western Royalty alleges that Westerburg did not request a finding from the California Probate Court as to the value of the Western Royalty shares. Second, Western Royalty argues that four of Westerburg's requests are not made in good faith to determine the value of the shares or for a proper purpose. Third, Western Royalty contends the only acceptable order would be to follow an Internal Revenue Service ruling regarding valuation of shares. All of these arguments are

without merit and were properly rejected by Judge Sowder.

**C.1. Western Royalty Failed to Properly Preserve Error Regarding the California Probate Court and Prevented Westerburg from Completing his Reporting Requirement**

Western Royalty argues that Westerburg's alleged failure to request the California Probate Court to determine the value of the shares somehow impugns Westerburg's proper purpose in this matter. Assuming that Western Royalty intended to cite Appendix L instead of Appendix K on this issue (Appendix K is the Final Summary Judgment), Western Royalty is citing to a document that it neither attached to its Motion for Summary Judgment nor provided to the trial court. Further, this document is not authenticated and contains multiple evidentiary failings including hearsay. As Western Royalty did not include this document at the trial court level and deprived Westerburg of an opportunity to refute it, Western Royalty has failed to properly preserve any error regarding Appendix L and Westerburg's alleged actions before the California Probate Court.

But, even if this Court allowed Western Royalty to proceed with this argument using this document, this argument is ineffective to refute Westerburg's proper purpose. As set forth in Westerburg's affidavit, Western Royalty's conduct has stymied Westerburg's ability to meet his reporting requirements under the California Probate Code. *Clerk's Record,* Vol. 1 – 95-100. Westerburg specifically described why he cannot meet that obligation with Western Royalty's current disclosures and what additional evidence he will need to do so. *Clerk's Record,* Vol. 1 – 98-100.

Further, Westerburg's affidavit states that he will complete his reporting requirement once he has sufficient information. *Clerk's Record,* Vol. 1 – 97. Essentially, the document that Western Royalty improperly cites to this Court is preliminary and will be amended once this Court affirms the Trial Court's ruling and Western Royalty makes available the required documents.

### C.2.   Judge Sowder's Order Limited to Documents that Satisfy Westerburg's Proper Purpose

Western Royalty's second argument claims that four of the document categories ordered by Judge Sowder do not meet Westerburg's "Proper Purpose" of determining share value. These categories include the identities of shareholders, bank statements and cancelled checks for a 5 year period and cash flow reports and other documents reflecting monies received and expenditures made for the same five year period. Western Royalty simply asserts that these requests were not made in good faith to determine the value of the shares. Western Royalty offers no analysis or precedential authority to substantiate its criticism of Judge Sowder's order. Western Royalty just says it.

In fact, there is a very good reason that Judge Sowder included those four categories in the eight total categories of documents set forth in the Final Summary Judgment. Initially, Judge Sowder's ordered Western Royalty to make available for inspection seven specific categories of documents and provide a sworn statement that Western Royalty had no good will or intangible value. *Clerk's Record,* Vol. 1 – 75.

16

Western Royalty responded by producing four years of tax returns, three leases and a sworn statement that the company has no good will or intangible value. Western Royalty affirmatively stated that it had no financial documents detailing the book value of the stock, no financial statements from the last four years and no profit or loss statements from the last four years.[1] *Clerk's Record,* Vol. 1 – 107-220.

This document production did not approach the level necessary to allow Westerburg to determine the share value for Western Royalty. Specifically, Westerburg was unable to determine the book value of the stock as he did not know the total number of shares issued and outstanding and the cash or cash equivalent of each and every asset of Western Royalty, including, but not limited to, the value of mineral interests owned by Western Royalty. *Clerk's Record,* Vol. 1 – 98-100. Other information that would bear on this issue would be the dates, prices and numbers of shares and parties to prior transfers of any shares. *Clerk's Record,* Vol. 1 – 98-100.

Given that it would be impossible for Western Royalty to manage the company without such financial documentation, Westerburg pointed out that documents such as a stock registry, profit and loss statements, balance sheets or any other basic accounting information are critical to determining what the values

---

[1] In an email to the Trial Court dated June 25, 2014, Mr. Tom Whiteside, President and attorney for Western Royalty, stated that the company had three Certificates of Deposit with a total value of approximately $103,000. *Clerk's Record,* Vol. 1 – 221-222.Western Royalty did not produce a balance sheet evidencing $103,000 cash or an equivalent asset (such as a Certificate of Deposit) nor is there a document reflecting any expenditure of the $103,000.

of the Estate's shares in Western Royalty are. *Clerk's Record,* Vol. 1 – 97-100. Even if Western Royalty had given all of its financial information sufficient to determine the value of the business (which it did not), Westerburg still cannot evaluate the per share value without knowing how many shares are issued and outstanding. *Clerk's Record,* Vol. 1 – 97-100. Since the Estate only owned 350 shares, the per-share value is the critical issue for California Probate Court – not the total value for Western Royalty.

Consequently, Westerburg filed his motion for summary judgment and asked the trial court to expand the original order. After reviewing the affidavit of Robert Westerburg and the previous documents that Western Royalty produced, Judge Sowder ordered Western Royalty to produce eight specific categories of documents.

### C.3. Western Royalty Incorrectly Represents the Effect of IRS Ruling

Western Royalty's last argument against Judge Sowder's Final Summary Judgment is that an IRS ruling determines how shares of a closely-held corporation are valued and that Western Royalty has complied with this ruling. Western Royalty has overstated both the language in and the effect of this ruling. The ruling includes the caveat that "*The following factors, **although not inclusive** are fundamental and require careful analysis in each case*:". (Cross-Appellant Brief, Appendix G, emphasis added). By that very language, the IRS acknowledged that

the listed factors are not an exhaustive list of the issues which may be considered. Further, no language exists in this Ruling which reads that it is binding or pre-emptive on any court in any jurisdiction. While the IRS may consider it their own policy, Western Royalty failed to show how expanding beyond the categories set under this ruling constitutes any breach of law or a reversible error.

Moreover, even if this Court were to hold that this ruling was conclusive and pre-empted any Texas law or judicial determinations, Western Royalty failed to comply with the requirements of the ruling. As set forth in C.3., Western Royalty's production was wholly insufficient to meet Westerburg's proper purpose, the requirements of the IRS ruling or Judge Sowder's first order.[2] Western Royalty is asking this Court to reverse Judge Sowder and hold that since Western Royalty says it does not have the kind of documents that IRS ruling identified, Western Royalty is absolved from its obligations under 21.218 of the Texas Business Organizations Code. Given Western Royalty's conduct, Judge Sowder had no other option but to grant Westerburg's Motion for Summary Judgment and to order Western Royalty to produce additional documents to satisfy Westerburg's proper purpose.

---

[2] Western Royalty wrote that the trial court accepted the IRS ruling as "a good, common sense approach to use". (Cross Appellant's Brief, p. 15). That language appears nowhere in the trial court's prior order and Western Royalty failed to cite where and when that statement was allegedly made.

19

## CONCLUSION and PRAYER

Westerburg contends that Judge Sowder correctly granted his motion for summary judgment in that Westerburg is entitled to review Western Royalty's books and records pursuant to section 21.218 of the Texas Business Organizations Code. Westerburg put on evidence of each element of his claim to access to Western Royalty's books and records as set forth in that section. Judge Sowder held that there were no genuine issues of material fact regarding those elements and rendered a summary judgment in favor of Westerburg granting him access to eight specific categories of documents. Western Royalty contends that it has produced sufficient documents to satisfy Westerburg's purpose. Based on the uncontroverted evidence before the trial court, Judge Sowder determined as a matter of law that Western Royalty had failed to produce the documents necessary for Westerburg to meet his obligation to the California Probate Court. Nothing in Western Royalty's brief points to any contradiction in the evidence before Judge Sowder. As such, Judge Sowder properly granted Westerburg's Motion for Summary Judgment.

For the reasons stated herein, Westerburg prays that this Court affirm the portion of Judge Sowder's ruling in the *Final Summary Judgment* in which he ordered Western Royalty to produce corporate books and records in eight specific categories. Given the evidence adduced at the summary judgment proceeding, Westerburg further prays that this Court render a judgment in favor of Westerburg

for his total attorney's fees through this appeal. Finally, Westerburg also prays for all other relief, in law and equity, to which he may be justly entitled.

Respectfully submitted,

*WESTERBURG & THORNTON, P.C.*
6060 N. Central Expressway, Suite 690
Dallas, Texas 75206
Phone No.: 214.528.6040
Facsimile: 214.528.6170
steve@mwtlaw.com

By: _____
Steven Thornton
State Bar No. 00789678

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure and the Texas Rules of Appellate Procedure on this 4th day of June, 2015.

_____
Steven Thornton

21

# CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 3,456 words (excluding the caption, identity of parties, table of contents, table of authorities, statement of case, statement of issues presented, statement of jurisdiction, signature, proof of service, certification, and certificate of compliance). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

_____

Steven Thornton

# CROSS- APPELLEE'S APPENDIX

List of Documents

Final Summary Judgment                                      A

California Probate Code § 8800                              B

California Probate Code § 8804                              C

California Probate Code § 8850                              D

Tex. Bus. Orgs. Code § 21.218                              E

Tex. Bus. Orgs. Code § 21.222                              F

12/9/2014 11:15:00 AM
Barbara Sucsy
District Clerk
Lubbock County, Texas

TB

NO. 2014-510,562

| | | |
|---|---|---|
| ROBERT WESTERBURG, ADMINISTRATOR OF THE ESTATE OF R.D. WEST a/k/a RANDY DIXON WESTERBURG | § § § § § § § § § | IN THE DISTRICT COURT |
| VS. | | 99TH JUDICIAL DISTRICT |
| WESTERN ROYALTY CORP. | | LUBBOCK COUNTY, TEXAS |

### Final Summary Judgment

On _____December 8_____, 2014, the Court considered the following motions by submission made in the above-entitled and numbered cause:

a. *Plaintiff's Motion for Summary Judgment*; and,

b. *Defendant Western Royalty Corporation's Motion for Summary Judgment.*

After considering the motions, pleadings, evidence and the appropriate legal authority, this Court is of the opinion that Plaintiff's motion should be GRANTED *In part* and that Defendant's motion should be DENIED *in part*.

IT IS, THERFORE, ORDERED, ADJUDGED AND DECREED that Plaintiff Robert Westerburg, Administrator of the Estate of R.D. West a/k/a Randy Dixon Westerburg's Motion for Summary Judgment is GRANTED. *In part*

IT IS FURTHER ORDERED that Defendant Western Royalty Corporation's Motion for Summary Judgment is DENIED. *in part*

IT IS FURTHER ORDERED that the Defendant Western Royalty Corporation shall produce to Plaintiff Robert Westerburg, Administrator of the Estate of R.D. West a/k/a Randy Dixon Westerburg the following documents:

1. The records containing the names and addresses of all past and current shareholders of the corporation and the number and class or series of shares issued by the corporation held by each of them.

2. The records containing the names and last known mailing addresses of shareholders entitled to vote at any shareholders meeting.

3. The bank statements and cancelled checks for the period January 1, 2009, to the present.

4. The cash flow report(s) and/or check register and/or check stubs reflecting the monies received and the expenditures made for the period January 1, 2009, to the present.

5. The documents describing the mineral interest and/or legal description of each mineral interest presently owned by Western Royalty Corp.

6. The deeds evidencing Western Royalty Corp.'s ownership of mineral or royalty interests.

7. The documents evidencing ownership, leasehold, or royalty interest in real or personal property owned by Western Royalty Corp.

8. The Division Orders reflecting mineral interests owned by Western Royalty Corp.

IT IS FURTHER ORDERED that Defendant Western Royalty Corporation shall copy and email the above-described documents to Plaintiff's counsel, Steven Thornton. Defendant Western Royalty Corporation shall Bates-label the above-described documents and shall identify which documents are responsive to which categories set forth in this Order. Plaintiff shall reimburse Defendant for the reasonable costs of photocopying the above-described documents.

IT IS FURTHER ORDERED that Defendant Western Royalty Corporation shall produce the above-described documents listed in this Order to Plaintiff's counsel, Steven Thornton, on or before December 18th _____, 2014 at 5:00 p.m.

IT IS FURTHER ORDERED that Plaintiff have and recover from Defendant $0.00 Western Royalty Corporation the sum of ~~$13,487.50~~ as reasonable and necessary attorney's fees incurred in this cause.

IT IS FURTHER ORDERED that Plaintiff have and recover from Defendant Western Royalty Corporation the sum of $588.09 for costs incurred in this cause.

~~IT IS FURTHER ORDERED that Plaintiff have and recover from Defendant Western Royalty Corporation the sum of Five Thousand Dollars ($5,000.00) as reasonable and necessary attorney's fees for any appeal made to the Court of Appeals.~~

~~IT IS FURTHER ORDERED that, should Defendant Western Royalty Corporation make an appeal to the Texas Supreme Court, Plaintiff have and recover from Defendant Western Royalty Corporation the sum of Five Thousand Dollars ($5,000.00) as reasonable and necessary attorney's fees for any appeal made to the Texas Supreme Court.~~

IT IS FURTHER ORDERED that the costs of court are taxed against the Defendant Western Royalty Corporation for which let execution issue if the same are not timely paid.

IT IS FURTHER ORDERED that this judgment carries post-judgment interest at the rate of 5.00% per annum from the date of this judgment until paid, together with all costs of court in this behalf expended.

All writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary.

All relief requested in this case and not expressly granted herein is denied. This judgment, disposing of all the parties in the lawsuit and all of the issues, is final and appealable.

SIGNED on **December 8, 2014** _____.

William C. Rader

**JUDGE PRESIDING**

 LexisNexis®

1 of 3 DOCUMENTS

Deering's California Codes Annotated
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through Chapter 9 of \*\*\*
the 2014 Regular Session of the 2013-2014 Legislature.

PROBATE CODE
Division 7.   Administration of Estates of Decedents
Part 3.   Inventory and Appraisal
Chapter 1.   General Provisions

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Prob Code § 8800* (2014)

**§ 8800.   Inventory and appraisal; Certification that tax requirements have been satisfied or are inapplicable**

(a) The personal representative shall file with the court clerk an inventory of property to be administered in the decedent's estate together with an appraisal of property in the inventory. An inventory and appraisal shall be combined in a single document.

(b) The inventory and appraisal shall be filed within four months after letters are first issued to a general personal representative. The court may allow such further time for filing an inventory and appraisal as is reasonable under the circumstances of the particular case.

(c) The personal representative may file partial inventories and appraisals where appropriate under the circumstances of the particular case, but all inventories and appraisals shall be filed before expiration of the time allowed under subdivision (b).

(d) Concurrent with the filing of the inventory and appraisal pursuant to this section, the personal representative shall also file a certification that the requirements of *Section 480 of the Revenue and Taxation Code* either:

(1) Are not applicable because the decedent owned no real property in California at the time of death.

(2) Have been satisfied by the filing of a change in ownership statement with the county recorder or assessor of each county in California in which the decedent owned property at the time of death.

**HISTORY:**

Enacted Stats 1990 ch 79 § 14 (AB 759), operative July 1, 1991. Amended Stats 1992 ch 1180 § 1 (SB 1639).

**NOTES:**

**Former Sections:**

Former § 8800, similar to the present section, was added Stats 1988 ch 1199 § 82.5, operative July 1, 1989, and repealed Stats 1990 ch 79 § 13, operative July 1, 1991.

 LexisNexis®

Deering's California Codes Annotated
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through Chapter 9 of \*\*\*
the 2014 Regular Session of the 2013-2014 Legislature.

PROBATE CODE
Division 7. Administration of Estates of Decedents
Part 3. Inventory and Appraisal
Chapter 1. General Provisions

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Prob Code § 8804 (2014)*

§ 8804. **Failure to timely file inventory and appraisal**

If the personal representative refuses or negligently fails to file an inventory and appraisal within the time allowed under this chapter, upon petition of an interested person:

**(a)** The court may compel the personal representative to file an inventory and appraisal pursuant to the procedure prescribed in Chapter 4 (commencing with Section 11050) of Part 8.

**(b)** The court may remove the personal representative from office.

**(c)** The court may impose on the personal representative personal liability for injury to the estate or to an interested person that directly results from the refusal or failure. The liability may include attorney's fees, in the court's discretion. Damages awarded pursuant to this subdivision are a liability on the bond of the personal representative, if any.

**HISTORY:**

Enacted Stats 1990 ch 79 § 14 (AB 759), operative July 1, 1991.

**NOTES:**

**Former Sections:**

Former § 8804, similar to the present section, was added Stats 1988 ch 1199 § 82.5, operative July 1, 1989, and repealed Stats 1990 ch 79 § 13, operative July 1, 1991.

**Historical Derivation:**

(a) Former Prob C § 610, as amended Stats 1976 ch 922 § 1.

(b) Former Prob C § 611, as amended Stats 1970 ch 1282 § 13.

(c) Former Prob C § 8804, as added Stats 1988 ch 1199 § 82.5.

(d) Former CCP §§ 1450, 1451.

Cal Prob Code § 8850

 LexisNexis®

3 of 3 DOCUMENTS

Deering's California Codes Annotated
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through Chapter 9 of ***
the 2014 Regular Session of the 2013-2014 Legislature.

PROBATE CODE
Division 7.   Administration of Estates of Decedents
Part 3.   Inventory and Appraisal
Chapter 2.   Inventory
Article 1.   General Provisions

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Prob Code § 8850* (2014)

### § 8850.   Contents of inventory

(a) The inventory, including partial and supplemental inventories, shall include all property to be administered in the decedent's estate.

(b) The inventory shall particularly specify the following property:

(1) Money owed to the decedent, including debts, bonds, and notes, with the name of each debtor, the date, the sum originally payable, and the endorsements, if any, with their dates. The inventory shall also specify security for the payment of money to the decedent, including mortgages and deeds of trust. If security for the payment of money is real property, the inventory shall include the recording reference or, if not recorded, a legal description of the real property.

(2) A statement of the interest of the decedent in a partnership, appraised as a single item.

(3) All money and other cash items, as defined in Section 8901, of the decedent.

(c) The inventory shall show, to the extent ascertainable by the personal representative, the portions of the property that are community, quasi-community, and separate property of the decedent.

**HISTORY:**

Enacted Stats 1990 ch 79 § 14 (AB 759), operative July 1, 1991.

**NOTES:**

**Former Sections:**

Former § 8850, similar to the present section, was added Stats 1988 ch 1199 § 82.5, operative July 1, 1989, and repealed Stats 1990 ch 79 § 13, operative July 1, 1991.

**Historical Derivation:**

(a) Former Prob C § 571, as amended Stats 1971 ch 1648 § 1, Stats 1986 ch 14 § 2.

# APPENDIX E

## *Tex. Business Organizations Code § 21.218*

This document is current through the 2013 3rd Called Session

*Texas Statutes and Codes* > *BUSINESS ORGANIZATIONS CODE* > *TITLE 2. CORPORATIONS* > *CHAPTER 21. FOR-PROFIT CORPORATIONS* > *SUBCHAPTER E. SHAREHOLDER RIGHTS AND RESTRICTIONS*

## § 21.218. Examination of Records

**(a)** In this section, a holder of a beneficial interest in a voting trust entered into under Section 6.251 is a holder of the shares represented by the beneficial interest.

**(b)** Subject to the governing documents and on written demand stating a proper purpose, a holder of shares of a corporation for at least six months immediately preceding the holder's demand, or a holder of at least five percent of all of the outstanding shares of a corporation, is entitled to examine and copy, at a reasonable time, the corporation's relevant books, records of account, minutes, and share transfer records. The examination may be conducted in person or through an agent, accountant, or attorney.

**(c)** This section does not impair the power of a court, on the presentation of proof of proper purpose by a beneficial or record holder of shares, to compel the production for examination by the holder of the books and records of accounts, minutes, and share transfer records of a corporation, regardless of the period during which the holder was a beneficial holder or record holder and regardless of the number of shares held by the person.

## History

Enacted by *Acts 2003, 78th Leg., ch. 182 (H.B. 1156)*, § 1, effective January 1, 2006.

**Annotations**

## Notes

**Revisor's Notes. --**

No substantive change is intended.

## Case Notes

Business & Corporate Law: Corporations: Governing Documents & Procedures: Records & Inspection Rights: General Overview

Business & Corporate Law: Corporations: Governing Documents & Procedures: Records & Inspection Rights: Inspection Rights: Remedies

Business & Corporate Law: Corporations: Governing Documents & Procedures: Records & Inspection Rights: Inspection Rights: Shareholders

**LexisNexis (R) Notes**

**Business & Corporate Law: Corporations: Governing Documents & Procedures: Records & Inspection Rights: General Overview**

**1.** Divorced wife, who had beneficial ownership of 10 percent of corporate stock standing on corporate records in the name of her former husband or a trustee, was entitled to examine the corporate books. *Texas Infra-Red Radiant Co. v. Erwin, 397 S.W.2d 491, 1965 Tex. App. LEXIS 2378 (Tex. Civ. App. Eastland 1965).*

Steve Thornton

**Business & Corporate Law: Corporations: Governing Documents & Procedures: Records & Inspection Rights: Inspection Rights: Remedies**

**2.** Attorney's fees should not have been awarded to a minority shareholder because the evidence did not show that corporate books and records had been withheld in violation of former *Tex. Bus. Corp. Act Ann. art. 2.44(C)* (recodified at *Tex. Bus. Orgs. Code Ann. § 21.218(b)*). The company was entitled to impose reasonable restrictions for the protection and integrity of its books and records when it required that certain items be copied on its premises. *Ritchie v. Rupe, 339 S.W.3d 275, 2011 Tex. App. LEXIS 2217 (Tex. App. Dallas 2011).*

**Business & Corporate Law: Corporations: Governing Documents & Procedures: Records & Inspection Rights: Inspection Rights: Shareholders**

**3.** Attorney's fees should not have been awarded to a minority shareholder because the evidence did not show that corporate books and records had been withheld in violation of former *Tex. Bus. Corp. Act Ann. art. 2.44(C)* (recodified at *Tex. Bus. Orgs. Code Ann. § 21.218(b)*). The company was entitled to impose reasonable restrictions for the protection and integrity of its books and records when it required that certain items be copied on its premises. *Ritchie v. Rupe, 339 S.W.3d 275, 2011 Tex. App. LEXIS 2217 (Tex. App. Dallas 2011).*

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

Steve Thornton

# APPENDIX F

## *Tex. Business Organizations Code § 21.222*

This document is current through the 2013 3rd Called Session

*Texas Statutes and Codes* > *BUSINESS ORGANIZATIONS CODE* > *TITLE 2. CORPORATIONS* > *CHAPTER 21. FOR-PROFIT CORPORATIONS* > *SUBCHAPTER E. SHAREHOLDER RIGHTS AND RESTRICTIONS*

## § 21.222. Penalty for Refusal to Permit Examination of Certain Records

(a) A corporation that refuses to allow a person to examine and make copies of account records, minutes, and share transfer records under Section 21.218 is liable to the shareholder for any cost or expense, including attorney's fees, incurred in enforcing the shareholder's rights under Section 21.218. The liability imposed on a corporation under this subsection is in addition to any other damages or remedy afforded to the shareholder by law.

(b) It is a defense to an action brought under this section that the person suing:

   (1) has, within the two years preceding the date the action is brought, sold or offered for sale a list of shareholders or of holders of voting trust certificates for shares of the corporation or any other corporation;

   (2) has aided or abetted a person in procuring a list of shareholders or of holders of voting trust certificates for the purpose described by Subdivision (1);

   (3) has improperly used information obtained through a prior examination of the books and account records, minutes, or share transfer records of the corporation or any other corporation; or

   (4) was not acting in good faith or for a proper purpose in making the person's request for examination.

## History

Enacted by *Acts 2003, 78th Leg., ch. 182 (H.B. 1156)*, § 1, effective January 1, 2006; am. *Acts 2011, 82nd Leg., ch. 139 (S.B. 748)*, § 25, effective September 1, 2011.

**Annotations**

## Notes

**Revisor's Notes. --**

No substantive change is intended.
2011 amendment,
deleted "in consideration" after "certificates" in (b)(1).

## Case Notes

Business & Corporate Law: Corporations: Shareholders: Actions Against Corporations: General Overview
Civil Procedure: Remedies: Writs: General Overview

**LexisNexis (R) Notes**

**Business & Corporate Law: Corporations: Shareholders: Actions Against Corporations: General Overview**
**1.** Shareholder that brought suit against a corporation seeking permission to examine the books and records of the corporation was entitled to attorney fees because the shareholder was the "shareholder of record" even though the shares were in the name of another pledgee to secure payment of corporate debt. *Ft. Worth KJIM, Inc. v. Walke, 604 S.W.2d 362,*

Tex. Business Organizations Code § 21.222

*1980 Tex. App. LEXIS 3757 (Tex. Civ. App. Fort Worth 1980).*

**Civil Procedure: Remedies: Writs: General Overview**

**2.** Where the relators, a company, and certain of its officers, brought a mandamus proceeding before the court to have the trial court expunge from the record an order for discovery, the court held that the trial court, in granting certain stockholders' motion for discovery, had deprived relators of a jury trial on the issue of proper purpose because the stockholders would have received through the order allowing discovery all of the relief sought in the main suit, and thus relators were entitled to a writ of mandamus ordering the trial court to expunge its order for discovery. *Uvalde Rock Asphalt Co. v. Loughridge, 425 S.W.2d 818, 1968 Tex. LEXIS 314, 11 Tex. Sup. Ct. J. 268 (Tex. 1968).*

LexisNexis ® Texas Annotated Statutes

Copyright © 2015 by Matthew Bender & Company, Inc. a member of the LexisNexis Group All rights reserved.

Steve Thornton